QUESTION:
Is the Miami Beach Housing Authority, created under Ch. 421, F. S., authorized to enter into an employment contract with its secretary and executive director for a 5-year period?
SUMMARY:
The employment of a secretary and executive director of a municipal housing authority created and operating under Ch. 421, F. S., would appear to be an exercise of the governmental function of such housing authority in light of statutory authorization which permits such authority to delegate any or all of its governmental powers or duties to the secretary-executive director. Moreover, the relationship between the secretary-executive director and the governing board of the housing authority appears to be confidential and personal; and, therefore, a contract employing such secretary-executive director would probably not be considered binding upon a successor governing board of a housing authority. Accordingly, pending judicial determination, a proposed 5-year employment contract entered into by a municipal housing authority and its secretary-executive director would probably be invalid and unenforceable.
Section 421.04(1), F. S., authorizes the creation of housing authorities and provides in part, `[i]n each city (as herein defined) there is hereby created a public body corporate and politic to be known as the housing authority of the city . . . .' (Emphasis supplied.)
A housing authority created pursuant to Ch. 421, F. S., is empowered to exercise and perform
 public and essential governmental functions set forth in [Ch. 421] and [has] all the powers necessary or convenient to carry out and effectuate the purposes and provisions of [Ch. 421] including the . . . powers . . . to sue and be sued . . . make and execute contracts and other instruments . . . acquire, lease and operate housing projects . . . to . . . contract for the furnishing by any person or agency . . . of services . . . to acquire by the exercise of the power of eminent domain any real property . . . issue subpoenas . . .
 and to do other things necessary in connection with the operation of a housing authority. Section 421.08, F. S.
 Pursuant to s. 421.05(2), F. S., a housing authority is authorized to `employ a secretary, who shall be executive director' and to determine the `qualifications, duties, and compensation' of the executive director. Moreover, a housing authority is further empowered to `delegate to one or more of its agents or employees such powers or duties as it may deem proper.' Pursuant to s. 421.08(7), F. S., the authority, acting through one or more of the commissioners or persons designated by it, is authorized to conduct investigations and private or public hearings and to take sworn testimony thereat and issue subpoenas requiring the attendance of witnesses or the production of books and papers.
 The general rule with respect to contracts entered into by municipal corporations or municipal boards having power to contract is that such bodies may bind successors in office by a contract made in the exercise of proprietary or business powers but may not by contract prevent or impair the exercise by successors of legislative functions or governmental discretionary powers unless statutory authorization exists. See 63 C.J.S. Municipal Corporations s. 687, p. 549; 10 McQuillen Municipal Corporations s. 29.101, p. 492; and Annot., 149 A.L.R. 336. As a housing authority created under Ch. 421, F. S., is a public corporation possessing the legislative and governmental powers listed above, it is within the purview of this principle. See Mitchell v. Chester Housing Authority, 132 A.2d 873 (Pa. 1957); and Parent v. Woonsocket Housing Authority, 132 A.2d 873 (Pa. 1957); and Parent v. Woonsocket Housing Authority, 143 A.2d 146 (R.I. 1958), which reach this conclusion. Cf. AGO 074-234 holding that a housing authority created pursuant to Ch. 421 is an independent special district within the purview of and for the purposes of the Uniform Local Government Management and Reporting Act, part III, Ch. 218, F. S. Accordingly, inasmuch as the commissioners of housing authorities are appointed to serve staggered 4-year terms and the governing board is a continuing body, the validity of the proposed contract for the employment of a secretary and executive director for the authority depends upon the proprietary or governmental nature of the subject matter of the contract.
 There is no precise dividing line between the exercise of governmental and proprietary functions. They are difficult of distinction and tend to overlap. 23 Fla. Jur. Municipal Corporations s. 67, p. 93. Accord: American Yearbook Company v. Askew, 339 F. Supp. 719, 721 (M.D.Fla. 1972), aff'd, 409 U.S. 904 (1972).
 In Daly v. Stokell, 63 So.2d 644 (Fla. 1953), the Florida Supreme Court distinguished the two concepts as follows:
 We understand the test of a proprietory [sic] power to be determined by whether or not the agents of the city act and contract for the benefit and welfare of its people; any contract, in other words, that redounds to the public or individual advantage and welfare of the city or its people is proprietory [sic], while a governmental function, as the term implies, has to do with the administration of some phase of government, that is to say, dispensing or exercising some element of sovereignty.
Applying the foregoing to your inquiry, it is clear that it is the nature of the duties to be performed by the prospective employee which determines whether or not the contract of employment of such person represents an exercise of proprietary or governmental powers by the contracting governmental body. Other relevant factors include the extent to which the employee serves in a confidential relationship with the governing body, see Douglas v. City of Dunedin, 202 So.2d 787, 789 (2 D.C.A. Fla., 1967); and the extent to which the governing body exercises supervisory control over the employee, see 10 McQuillen Municipal Corporations, s. 29.101, p. 497.
Thus, in City of Riviera Beach v. Witt, 286 So.2d 574 (4 D.C.A. Fla., 1973) cert. den'd; Witt v. City of Riviera Beach,295 So.2d 305 (Fla. 1974), the court held that the employment of a city prosecutor is a governmental and not a proprietary function. Therefore, an employment contract which purported to extend beyond the terms of office of the contracting officers could not effectively bind their successors. In reaching this conclusion, the court stated:
 The operation of a Municipal Court by the City under its charter and the employment of a City Prosecutor to prosecute all persons arrested and brought to trial before the court for the violation of municipal ordinances `has to do with the administration of some phase of government, that is to say, dispensing or exercising some element of sovereignty. . . .' See Daly v. Stokell, supra. The employment of a city prosecutor, in our opinion, relates to the performance of a governmental function; the employment of a City Prosecutor cannot be considered as having been made in the exercise of the City's business or proprietary powers, as that phrase is commonly understood. [286 So.2d at 576.]
Similarly, in Mitchell v. Chester Housing Authority, 132 A.2d 873,880 (Pa. 1957), the Pennsylvania Supreme Court held that a 5-year contract of employment between a municipal housing authority and its secretary-executive director was invalid and unenforceable. The court noted that testimony at trial described the secretary-executive director as the `chief officer' and `right arm' of the housing authority and that the secretary-executive director was in charge of implementing the policies of the housing authority and administrating its business. In reaching its conclusion, the court stated:
 The principle . . . is clear, namely, good administration requires that the personnel in charge of implementing the policies of an agency be responsible to, and responsive to, those charged with the policy-making function, who in turn are responsible to a higher governmental authority, or to the public itself, whichever selected them. This chain of responsibility is the basic check on government possessed by the public at large. A contract which will have the effect of, and indeed appears to have been executed with the express purpose of, violating this rule runs counter to public policy and will not be enforced against the public interest. [132 A.2d at 880.]
Applying the foregoing judicial decisions to the instant inquiry, and pending judicial determination, it is my opinion that a municipal housing authority would not be authorized to enter into a 5-year employment contract with its secretary-executive director. A housing authority created and operating under Ch. 421, F. S., is statutorily empowered to delegate any or all of itsgovernmental powers or duties to its secretary-executive director. The executive director, as the secretary of the governing board, apparently serves the board in that capacity much the same as a corporate officer in that capacity serves a private corporation for profit; and, in his dual capacity as secretary-executive director of the governing board, he carries out the executive function of implementing and enforcing the policies and regulations and administrative functions of the governing board. Moreover, a housing authority is also authorized by statute to designate its secretary-executive director to conduct investigations, and public or private hearings, and issue subpoenas requiring the attendance of witnesses thereat and take sworn testimony. These latter duties fall clearly within the scope of governmental functions as that term is defined in Daly v. Stokell, supra. Furthermore, the relationship between the secretary-executive director or a housing authority and the members of the authority must, in my opinion, be characterized as confidential and personal. See Mitchell v. Chester Housing Authority, supra, at 876, wherein the court stated that the executive director and secretary of the housing authority was `an executive officer whose functions with respect to the board [were] necessarily confidential and most intimate . . . .' Also see City of Riviera Beach v. Witt, supra, at 576, wherein the district court noted that the fact that the services of the city prosecutor were procured pursuant to a `contract of employment' as distinguished from an `appointment' to the office of city prosecutor did not change the character of the governmental function being performed.
Accordingly, your question is answered in the negative.
Prepared by: Patricia R. Gleason Assistant Attorney General